May it please the court, my name is Richard Gray and I represent the appellant and the defendant Autozone in this matter. I'd like to reserve about four minutes for rebuttal. The issue here is whether the district court once again abused its discretion in issuing a remittitor regarding Mr. Cosby's emotional distress damages in the amount of $250,000 for being placed on a remittor, according to its own testimony, being a little upset. Now, I'd like to discuss three reasons why Autozone believes that there remains an abuse of discretion here. But first, I think it's critical to keep in mind the specific factual context of Mr. Cosby's reasonable accommodation claim. Very briefly, Mr. Cosby was a district manager. He was responsible for 10 to 12 stores scattered across Northern California. He was required to spend, by his own estimate, 20 hours average, 20 hours a week, driving to those stores. In January of 2006, he apparently fell asleep at the wheel and his doctor restricted him from driving. So Autozone placed him on an unpaid medical leave of absence. His preferred accommodation at the time was to be allowed to work from home and have somebody else drive him to his stores. During his legal career. Kagan. What does any of this matter? There was a finding that there was a failure to accommodate and there was a finding that there was a failure to engage in the interactive process, and you're not challenging that. No, we're not. I'm trying to give a factual context. Well, we know the factual context, but unless you can link it up to some argument, which I don't see how you can, because there's a finding. I'm not challenging the finding. I'm challenging the sufficiency of the evidence regarding emotional distress. Yes. And the fact is, during the brief leave of absence, he was diagnosed with sleep apnea, he was fitted with one of these sleep masks, and that solved the problem. He returned to work in less than a month to a supportive environment by his own admission with no work restrictions. So that's the reasonable accommodation factual context. Now, the first of the three reasons. Well, he didn't say it was a supportive environment. He said they made some supportive comments. He also said that they, that they, you know, very soon afterwards gave him a negative review when he had never had a negative review and he was very angry about it. True. But with regard to his supervisor, Mr. Kibaki, the regional manager, this Court said in its prior opinion, he returned without any restrictions and his. Well, I know it said it, but where in the record does he say it was a supportive environment? Mr. Kibaki made supportive comments. That's what I was referring to. Mr. Cosby agreed that that was the case. So, again, the first reason why we believe there is still an abuse of discretion. There's no evidence that Cosby's emotional distress from the failure to accommodate was, quote, substantial or enduring. Now, in this Court's 2011 memorandum opinion, which established the law of the case here, this Court said, quote, to recover damages for emotional distress, the injury must be severe, i.e., substantial or enduring, as distinguished from trivial or transitory, end quote. This Court went on to say that. Was the jury instructed to that standard? The jury was not instructed in those words. It was just given a general damages instruction, correct? That's correct. Where did that notion of it had to be enduring come from? The case law. But I thought that was in the alternative. That's the language, yes, substantial or enduring. That's what the case law says. So it doesn't have to be enduring. It has to be substantial or enduring. You're right. All right. Do you request an instruction on that? No. It looks like it was just a standard general damages instruction was given, and there was a reference in there to emotional harm or emotional damages. That's right. And I think the substantial was there. But it wasn't the jury wasn't instructed. You have to find substantial and enduring. It was just given the general damages instruction. That's correct. But that is the California case law of regarding emotional distress damages, which is controlling here. Well, but, you know, the jury was just acting according to the instructions that it was given. True. Correct. And nobody challenged those instructions. Everybody – apparently you agreed to those instructions. That's correct. So. So the – as I understand it, you have two major contentions. One is that there's – it appears fairly clear that the jury must have relied in part on the distress from the ultimate termination, and the district court seems to have relied on that somewhat as well. And what's wrong with that? Well, because the law of the case, based on this – Well, the law of the case is clearly to the contrary, because it says there's an even-if sentence as to this particular point. You're trying to rely on an implication from something else, but as to this particular issue, there's an precise sentence. And the precise sentence is, and I quote, Even if the jury found – this is from the district court. No, it's from the district court appeal. Oh, I'm sorry. I'm sorry. It's from this court. Yes. Even if the jury found that Autozone's failure reasonably to accommodate contributed to his later termination, the evidence is insufficient to support the award. That's – That was the one – that was the award for $1.3 million. Yes. That sentence can best be viewed as sort of an alternative holding. In other words, an additional reason why the evidence was insufficient to support the emotional distress award. The Court was simply invoking a hypothetical to prove its point. Well, they go on with it. They go on to discuss the termination damages. Why would they be doing that? Well, what they go on to say is even if. Right. And then they go on with that. The evidence is still insufficient to be substantial or enduring. Insufficient meaning as to the amount, but not insufficient to any amount. True. True. But the point is, that language does not in any way alter the Ninth Circuit's  The Ninth Circuit has given a clear instruction to the district court that the amount of economic damages is not to exceed one month's pay. Right. And that is largely because that's what was asked for. Not only that was asked for, that's what the plaintiff's own economic expert testified was the result. Okay. So that's what he got. But how does that prove anything about the non-economic damages? All right. There's no express finding by the Ninth Circuit, but by necessary implication our position is this Court must logically have concluded that the failure to accommodate did not cause the economic damages associated with his termination. And therefore, to be analytically consistent, this Court's. Well, I mean, there's another issue here, which is what was the jury's, on the verdict form, what was the jury asked to find with regard to the retaliation and discrimination issues? And they were told, asked to both, that the — let's see if I can find it. Was Randy Cosby's physical disability a motivating reason for Autozone's decision to discharge Randy Cosby? Now, that's a different question. And they said no, and that's — and they stopped. And there's a parallel question with regard to retaliation. Isn't that a different issue from whether or not the termination, the earlier failure to accommodate and failure to engage in the interactive process was a cause of the emotional distress damages at termination? Yes, it is a different issue. That just simply means that the jury found that the eventual termination was not unlawful. Right. Because of what was going on in their head at the time of the — of the termination. But they weren't rejecting the notion that necessarily that because of what had happened earlier, there was a whole series of events, essentially, this man did become disaffected and did start doing a lousy job, and they were entitled to fire him for that. But in fact, it was all a cause — there was a causal relationship between the original problem and what happened in the end. The problem is there's no evidence of that in the record, of the causation. The only evidence in the record is that Mr. Cosby said that I was a little upset about being put on this forced leave of absence. At that point, but then a bunch of other things happened. Well, the bunch of other things, though, dealt with his performance problems before he ever went on the leave of absence. On March 17th, a month after he — of 2006, a month after he returned from his leave of absence, he was given three disciplinary documents. The two most important ones were a midyear evaluation covering a six-month period before, before he even went on the leave of absence. When he was actually ill. That's right. But before he had ever requested a reasonable accommodation. So — and that's what put him on the performance improvement plan. What happened after he came back is he just didn't improve enough under his sort of last-chance performance improvement plan, which related to his performance prior to the leave of absence, prior to requesting the accommodation. So getting back to the point about the analytical consistency, we submit that this Court's prior opinion must mean that just as with his economic damages, Mr. Cosby is not entitled to any non-economic damages flowing from his termination. How can one be the case and the other not be? In order to be consistent, he's not entitled to any economic damages flowing from the termination — I mean, non-economic damages flowing from the termination. United States v. Hughes Aircraft, Ninth Circuit case, says that the law of the case applies to an appellate court's, quote, explicit decisions, as well as those decisions, decided by necessary implication, end quote. So although in its — in this Court's original memorandum opinion from 2011, there's no explicit finding, it certainly is, as a matter of logic, an implicit finding that controls the law. Roberts. I might agree with you, if there hadn't been this statement, even if the jury found that Judge Rezan went over with you earlier. Right. I mean, that seems to indicate that they, you know, even by implication, they didn't think it was sufficient. Well, I respectfully disagree. As I said before, I think that's, like I say, kind of an alternative holding, so to speak. The Court is posing a hypothetical. One additional reason why there's insufficient evidence, that even if there were this — No, the prior panel was concerned with the $1.3 million award of non-economic damages. They just — and this evidence, this record, they just didn't think it supported it. That's correct. And one of the reasons was that the economic damages are limited to one month's pay, i.e., the harm caused by the payment. Well, yes, but the jury was — the jury could well have found that his termination — that the violation of his accommodation and failure to participate in the interactive process was a factor, a substantial factor in his termination. Well, they couldn't have found it on any evidence in the record. Why not? Because there is no such evidence. But he said he was a little upset. He didn't say — Despite — even though he said he was a little upset, they still had the entire — what was it, a 9-day trial? All that evidence, and I — you know, to be honest, I haven't read every — the transcript of all — of everything that was there. But it seemed like when reading the detailed briefs that were presented to us, especially the blue brief that — your brief, I guess it was, it went detailed, all the evidence. It looks like — I mean, the jury could well have concluded that — that the violation of his accommodation rights and failure to engage in the interactive process comes back from his forced leave. They — gets the negative evaluation, and, you know, he's upset, extremely upset with that. His performance is not up to snuff, as you were just saying a few minutes ago. I don't know why the jury couldn't have thought that — or couldn't have concluded that all of that was a factor, a substantial factor, in his termination. And then you look at that and you look at what — his reaction on the day that he was fired, and while it may not add up to $1.3 million, Judge Carlton thought that it added — that it was worth $250,000. Now, whether I was sitting there and would have given him $250,000 is another question, but Judge Carlton, having sat through all the evidence that was presented, listened to everybody, observed his demeanor, the witness's demeanor, and his — Judge Carlton's judgment after a 9-day trial thought that $250,000 was sufficient. And I don't know — I mean, it's hard — I appreciate your concern, and it does sound like a lot of money, but it seems like there was evidence there to support it. The problem is Judge Carlton relied substantially on Cosby's emotional state following his termination, and that violated the law of the case. You can't get there without doing that. That's clear. All right? You can't get to the — without following through what happened after he came back from leave and his upset during that period and his upset at the end of the period. But, I mean, I have a slightly different question, which is, does it even have to have caused the termination, as opposed to have contributed to the degree of emotional distress he felt at the time of the termination? In other words, he was already disaffected, upset, alienated, and his reaction to the termination may have been — his emotional reaction to the termination may have been in part influenced by everything that had happened before, quite aside from whether it caused the termination. Why isn't that good enough? Mr. Cosby himself said he's the one who brought the claim that my termination was discriminatory and retaliatory. The jury said no. Okay. The whole leave of absence, the whole reason — But it was put to him in a very limited fashion. In other words, they were not asked whether it was that termination was caused by the refusal to accommodate or anything else, right? They weren't asked that. Correct. Okay. Thank you. May it please the Court, my name is Lawrence Boehm, and I'm proud to represent Randy Cosby. Your Honors have already touched on many of the arguments that I was going to make. I'd like to begin by first indicating that the instruction that was given to the jury was a typical substantial factor instruction number 33. A legal cause of injury, damage, loss, or harm is a cause which is a substantial factor in bringing about the injury, damage, loss, or harm. You're talking about the instruction on the failure to accommodate. This was the general instruction for the question, which was, was defendant's unlawful conduct a substantial factor in causing harm? A substantial factor which causes harm is a factor which is more than remote or trivial in causing the harm. Right. I'm quite aware of that instruction, but my earlier question about the damages instruction had to do with instruction 38, which was a general — an instruction on general damages. I mean, just — you know, it says reasonable — you can award reasonable compensation for any pain, suffering, discomfort, fears, anxiety, and other mental and emotional distress which the plaintiff suffered because of the injury. And for any similar suffering, you believe it is reasonably certain plaintiff will suffer for the same reason. I understand. I mean, so, I mean, I don't know where we — we sort of zeroed in on enduring harm, on enduring harm. And I actually went back — and, first of all, Judge Carlton, in his order addressing this, not only did he follow the exact mandate from the Ninth Circuit to put the reasons, but he actually cited to the Young case, which is sort of the case within the case, defense cites the Gilchrist case, and inside the Gilchrist case, they cite to the District Judge Carlton utilized. So Senior District Judge Carlton goes, sees the exact legal standard, then puts in his orders exactly what Your Honors have been talking about, which is that a reasonable juror could have concluded that there was severe emotional distress based on all of the various testimony, a sea of hopelessness, I wish I had been shot. He even goes on to talk about and quote from Mr. Cosby's testimony into the future. But where we are now is that — is following a remand from this Court and after the jury said you were not wrongfully terminated. Correct. So what precise evidence do you point to that supports even an award of a quarter of a million  First, all of the evidence that His Honor, Judge Carlton, put into his order, plus the various evidence that was cited in our briefs, plus — I've read that, and it all sounds like his disappointment and disillusionment, et cetera, about being terminated, which is off the charts. That's not before us. Correct. So I believe it is before you to the extent that that's evidence that can be consistent with a substantial factor. So you have Mr. Cosby having his disability rights protected under the Fair Employment and Housing Act being violated, by the way, with a finding from the jury that that violation was consistent with the ill will requisite for punitive damages, even though they didn't do it. So it's not like it was an administrative mistake. It was a cruel thing that they did to Mr. Cosby, as decided by the jury. And to fully answer your question, Your Honor, in fact, going back through the testimony, I would direct the Court to Reporter's Transcript 1359, where Mr. Gray is questioning my client, Mr. Cosby, about issues that were connected with his failure to accommodate and then suggesting that somehow they're not related to the totality. And it starts at line 20, page 1359. We just went through a list of four things, fatigue, tired, nausea, headaches. Do you remember those? Answer, okay. And we established the fact that those were tied to your undiagnosed sleep apnea in 05. Answer, correct. Other than those four items, were there any other emotional injuries that you attributed to the allegations in your complaint? Answer, you mean from me getting terminated from AutoZone? Question, well, if that's one of the allegations in your complaint, then yes. Answer, I mean, I went through a lot of emotional distress when I was, I mean, I didn't sleep at nights. I mean, that caused a lot of problems for me when I was terminated from AutoZone. The Judge's Office. The whole here, if there is a whole, is what's the connection between all of that and the record and the reasonable accommodation? And I mean, my view is that there's no preclusion because the jury was told to consider everything that was caused by that and the decision with regard to the discrimination and retaliation didn't ask the same question. So that's not a legal problem, but the question is what does the record show about the connection between the failure to accommodate and failure to engage in the interactive process and what his emotional distress at termination, assuming that that emotional distress at termination is otherwise sufficient to support the award. And to answer that, there were multiple factual instances in the termination paperwork, the eight reasons that they said that he had a poor attitude, for instance, and many of those reasons dated all the way back to his. You lost that claim. I'm sorry? You lost that claim. He did lose that claim. Well, what I'm saying is, I thought you just asked me what evidence is there that the failure to accommodate caused Mr. Cosby's performance to decline to the point that he was terminated. That's what I'm asking. And that's what I thought I was answering when I'm saying that he doesn't get accommodated. As a result of that, when he comes back from the accommodation, they're hitting him with a corrective action, some of which dealt with issues that he could not do, like the audit, because he was not being properly accommodated during that time. He's upset that he didn't get paid. That's not ever made mention by the defense, but his time on the beach was an unpaid time off when they're still telling him that they want him to check in with stores. Or at the same point when he comes back, he's greeted then with a midyear review at the exact same time, saying that for the look-back period, which would include his time where he was not being accommodated, he was failing to adequately perform. And as Judge Carlton said, having watched the evidence, that this treatment could have so badly demoralized and disincentivized Mr. Cosby, that his performance began to slip in the way that defendants note. Or alternatively, as posited by Your Honor, this final insult where he's terminated in light of the fact that he was previously not accommodated could also have caused that. The reality is, not only is it going to cause not necessarily the termination, but the degree of upset at the termination. Absolutely. And the most important thing to keep in mind in this particular instance is justice is protected here by two separate finders of fact. The jury, who saw everything and did what it did, and then the senior judge of our Eastern District of California, Judge Carlton, coming back in, having read this court's and understanding the court's ruling and quoting from it in his order, and making a decision which he told me, you're not going to like my remanded amount. He specifically said that. And the reality is, it's just been so long, and we opted to not have the new trial. We also asked whether causation was going to have to be revisited. That order, which was from Judge Carlton specifically indicating that causation would not have to be revisited, that was E.R. 36 through 38. Of course it would, though. I mean, that has to be, because the whole question on damages is what is the, you know, what is the reasonable accommodation was a substantial factor in causing plaintiff's harm, so you have to prove that. Right. Which means all we had to prove, if we even wanted to retry it, would be, well, that causation analysis, all it entails is that it caused us harm, not necessarily that it caused us termination. Right. And it, well, and it could have even caused us termination, it just must be more than remote or trivial in causing somebody to be terminated. I come up with this scenario. Let's say that the person is a night bus driver, and then they are diagnosed with night blindness, and then they come back and they say, well, look, we can't accommodate you, you can either drive at night or that's it, and then they start hammering him on his performance because he doesn't show up to drive at night because he can't, and then he's terminated for a legitimate reason, that he can't drive at night. And that doesn't mean that the failure to accommodate him was not more than remote or trivial in his not showing up for work to drive at night. I'm just making the point here that the substantial factor standard in terms of whether or not something causes harm is a very low standard, and that there was sufficient evidence in this case, and certainly looking at the legal standards for when we remand to a district judge and there's a remitter, has Judge Carlton exercised his discretion in some way that is so patently and blatantly obvious that it, although virtually unassailable, now it should be changed? Clearly not. And I don't need to use my entire time unless there's more questions from Your Honors. Thank you very much. Thank you, counsel. Roberts. Thank you. I'll give you a minute for rebuttal. Thank you, Your Honor. You had about 35 seconds. Your Honors, I think Judge Hawkins got it right when he said, that's off the charts. It's not before us. You lost that point. Judge Karlton. What point exactly did they lose? The fact that the termination was not unlawful, therefore, any emotional distress damage is caused by the termination. Where does the thought, therefore, come from? That's the question. Well, Judge Carlton, he relied, to get his remitter of $250,000, he relied almost exclusively on the emotional distress from the termination. Correct. But the termination not being unlawful was based on the understanding that it had to be motivated by the disability. And I presume what you argued was, well, he just wasn't performing at that point. And the jury agreed. The jury agreed that he wasn't, and, therefore, said you weren't discriminating against him for his disability. But that's a different question from whether the failure to accommodate was a substantial cause in the harm that occurred when he was terminated. That's right, and there's no evidence of that. He said he was a little upset. The performance issues started before the leave of absence, and he just didn't improve it. He might have said he was a little upset at that point, but the evidence seems to demonstrate that he was very upset, and he was angry, and he was resistant, and he was really not himself during that whole period. Because he erroneously thought his termination was unlawful, and it was not. No, no, not at the time of the termination. I'm talking in the interim period and which led to the termination. There's no evidence of that. The only evidence is he was a little upset. Really? I did read his testimony. He was upset about getting the disciplinary documents, yes, but not about the leave of absence. Thank you. Okay. Thank you, counsel. We appreciate your arguments. The matter is submitted at this time.
judges: Hawkins, Paez, Berzon